IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JUSTIN BARTZ,

                Plaintiff,

   v.

COLUMBIA COUNTY, ROBIN MESSER,
NOAH HOLLANDER, SCOUT BAHR,
JILL OSTRANDER, MITCHELL WOLFGRAM, and
JORDAN HAUETER,

                Defendants.

OPINION and ORDER

24-cv-671-jdp

---

Defendant Robin Messer, a deputy and canine handler with the Columbia County Sheriff's Office, stopped a truck for a minor traffic violation. Plaintiff Justin Bartz was a passenger in the truck. Messer's drug-sniffing K-9 alerted to the presence of a controlled substance at the truck. But Messer didn't find any drugs after patting down Bartz and searching the truck. Messer handcuffed Bartz, put him in his squad car, and drove him to the Columbia County Jail. There, Bartz was patted down and a scan of his body was taken using the jail's body scanner. Bartz was released after the scan showed he didn't have drugs in his clothing or body cavities. Bartz contends that defendants violated his Fourth Amendment rights by detaining him to conduct additional searches at the jail.

Both sides move for summary judgment. Bartz moves for summary judgment against the individual defendants. Dkt. 26. Defendants move for summary judgment on all claims. Dkt. 32. Bartz contends that he was detained so that law enforcement officers could develop evidence that would justify his detention. But the undisputed facts show that defendants had probable cause to detain Bartz based on evidence acquired during the traffic stop, and the

search for additional evidence did not violate Bartz's Fourth Amendment rights. The court will grant summary judgment to defendants and dismiss this case.

BACKGROUND

The court draws the following facts from the officers' body camera footage and from the parties' proposed findings of fact. These facts are undisputed.

This case arises from a traffic stop, the legitimacy of which Bartz does not contest. The material facts begin when defendant deputy Robin Messer's K-9 alerted to the odor of a controlled substance. After Messer's K-9 alerted, Messer spoke with plaintiff Justin Bartz, who said that there was nothing in the truck and that he doesn't even smoke marijuana. Messer asked Bartz to exit the truck and, with Bartz's permission, patted him down. Messer found no drugs on Bartz. Messer put Bartz in his squad car while he searched the truck. Messer found no drugs inside the truck either. Messer's K-9 did not alert when he sniffed inside the truck.

Messer went back to his squad car and asked Bartz when he last used drugs. Bartz at first said he couldn't remember. Messer asked Bartz if Bartz and the truck's driver had used drugs earlier that evening, and Bartz admitted that they had smoked marijuana about 30 to 45 minutes before the traffic stop. Messer put Bartz back in his squad car, and then he called his supervisor, defendant Jordan Haueter, a lieutenant with the Sheriff's Office. Messer asked Haueter if he could bring Bartz and the truck's driver to the Columbia County Jail and scan their bodies using the jail's body scanner. Haueter agreed that Messer could do so.

Messer went back to his squad car and told Bartz he was being taken to the jail. Messer had Bartz step out of his squad car so that he could put him in handcuffs. Bartz said: "So, you're placing me under arrest." Dkt. 35, Ex. 3 (Messer Body Cam, at 01:06:49–01:06:50).

Messer responded: "Nope. You're just detained." *Id.* at 01:06:50–01:06:51. Messer also said: "And if you don't have anything on you, then you get released." *Id.* at 01:07:04–01:07:07. Then, Messer handcuffed Bartz, put him back in his squad car, and drove him to the jail.

Upon Bartz's arrival at the jail, defendant Mitchell Wolfgram, a deputy with the Sheriff's Office who worked as a jailer, patted Bartz down. Wolfgram didn't find any drugs. Defendant Jill Ostrander, also a deputy and jailer, told Messer that the buttons on Bartz's jeans would show up on the body scanner, so she had Wolfgram put Bartz in jail uniform pants. After Bartz changed, defendant Scout Bahr, another deputy and jailer, had him step into the body scanner and then scanned his body. While Bartz was being scanned, Wolfgram looked through Bartz's jeans, sweater, and boots; he didn't find any drugs. The scan of Bartz's body didn't show any drugs on him or in his body cavities. Bartz was released without charges.

Additional facts will be discussed where pertinent to the analysis.

ANALYSIS

The Fourth Amendment prohibits unreasonable searches and seizures. The essential question is whether defendants' actions were objectively reasonable under the circumstances. *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021) (en banc). Bartz contends that defendants violated the Fourth Amendment in two ways: first by unlawfully arresting him, and then by conducting unlawful searches at the jail.

Both sides move for summary judgment on the main liability issues. The court will grant summary judgment if the material facts are undisputed and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When faced with cross-motions, courts apply the same summary judgment standards, viewing the facts and all reasonable inferences

from those facts in favor of the non-moving party for the motion under consideration. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). The question is whether there is admissible evidence that would support a reasonable jury verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## A. Unlawful arrest

Bartz contends that defendants unlawfully arrested him. Dkt. 27, at 9.[1] Officers violate the Fourth Amendment if they arrest an individual without probable cause. *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009). The existence of probable cause is an absolute defense to unlawful arrest claims. *Lyberger v. Snider*, 42 F.4th 807, 811 (7th Cir. 2022). Probable cause to arrest exists if a reasonable officer with the same knowledge as the arresting officer would have believed that the arrestee had probably committed a crime. *See Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010).

Messer had probable cause to arrest Bartz based on two key facts. First, Messer's K-9 alerted to the presence of a controlled substance. It is undisputed that Messer's K-9 is certified to detect the odor of controlled substances and trained to alert upon detection, so the reliability of the alert is not at issue. *See Florida v. Harris*, 568 U.S. 237, 246–47 (2013). Messer would have had probable cause to arrest Bartz based solely on the K-9's alert. *See Florida v. Royer*, 460 U.S. 491, 506 (1983). Second, Bartz told Messer that he had smoked marijuana about 30 to 45 minutes before the traffic stop. An officer has probable cause to arrest an individual when the officer smells marijuana and can localize the odor to that individual because the officer has reason to believe that person has committed the crime of possession of marijuana.

---

[1] Citations to filings from the docket use the page numbers assigned by CM/ECF, not the page numbers in the original document.

*United States v. Paige*, 870 F.3d 693, 700 (7th Cir. 2017). Messer didn't need to smell marijuana to suspect that Bartz had probably possessed marijuana: Bartz admitted that was the case. Messer did not unlawfully arrest Bartz.

Bartz resists this conclusion with two arguments. First, Bartz argues that, even if Messer had probable cause to arrest him, the arrest was nevertheless unlawful because Messer didn't intend to arrest him. *See* Dkt. 27, at 9–18. Bartz points out that Messer told him that he was *not* under arrest during an exchange immediately before Messer transported Bartz to the jail:

> Bartz: So, you're placing me under arrest.
>
> Messer: Nope. You're just detained. . . . And if you don't have anything on you, then you get released.

Dkt. 35, Ex. 3 (Messer Body Cam, at 01:06:49–01:06:51, 01:07:04–01:07:07). This is just a semantic quibble: it doesn't matter whether Messer subjectively intended to "arrest" Bartz or merely "detain" him, because whether an individual is under arrest is an objective inquiry. *Tebbens v. Mushol*, 692 F.3d 807, 816 (7th Cir. 2012); *United States v. Garcia*, 376 F.3d 648, 651 (7th Cir. 2004); *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 719 (7th Cir. 2013). All that matters is whether a reasonable person in Bartz's position would have thought he was free to leave. *See Ochana v. Flores*, 347 F.3d 266, 270 (7th Cir. 2003). If an individual is "handcuffed, read his rights, and transported to the police station in a police car," then he has been arrested. *Adams v. Szczerbinski*, 329 F. App'x 19, 24 (7th Cir. 2009). Bartz wasn't read his rights, but he was handcuffed, placed in the back of a squad car, and driven to a jail—classic hallmarks of being arrested. That Messner referred to this as "detention" doesn't make it unlawful.

Second, Bartz contends that his arrest was unlawful because Messer arrested him solely to conduct a body scan to justify his arrest. *See* Dkt. 27, at 11–18. To support his contention, Bartz points to a line of cases addressing the need for a probable cause hearing promptly

5

following a warrantless arrest. *Gerstein v. Pugh*, 420 U.S. 103, 113–14 (1975). Officers violate the Fourth Amendment when they unreasonably delay the probable cause hearing to gather evidence to justify the arrest. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). Bartz also points to an Eastern District of Wisconsin case, which held that detaining an individual for any period of time with no intention of charging her with a crime was unreasonable under *Gerstein* and *Riverside*. *Farr v. Paikowski*, No. 11-C-789, 2013 WL 1288041, at *1 (E.D. Wis. Mar. 25, 2013); *see also id.*, 2013 WL 160268, at *7 (E.D. Wis. Jan. 14, 2013).

Bartz analogizes his case to *Farr* and argues that defendants violated the Fourth Amendment by detaining him solely to take a scan of his body. *See* Dkt. 27, at 18. But the Seventh Circuit rejected the argument Bartz makes here in *United States v. Daniels*, 64 F.3d 311 (7th Cir. 1995). The plaintiff in *Daniels* argued that officers unreasonably delayed his probable cause hearing because they put him in a line-up while he was in custody. *See id.* at 314. The Seventh Circuit held that the line-up was lawful because it was done to collect *more* evidence against the plaintiff rather than to *justify* his arrest. *Id.* The Seventh Circuit reasoned:

> Daniels' argument seems to interpret *Riverside* to preclude law enforcement from bolstering its case against a defendant while he awaits his *Gerstein* hearing; that is a ludicrous position. *Gerstein* and its progeny simply prohibit law enforcement from detaining a defendant to gather evidence to justify his arrest, which is a wholly different matter. Probable cause to arrest Daniels already existed and that is what Ewer's affidavit reported. We therefore reject Daniels' contention that he did not receive a prompt *Gerstein* hearing.

*Id.* In this case, Messer had probable cause to arrest Bartz before transporting him to the jail, so conducting further searches of Bartz at the jail to bolster the case against him was not unlawful under *Gerstein* and *Riverside*. *Farr* didn't address *Daniels*, and for that reason, its reasoning is not persuasive. Bartz's arrest was lawful.

6

B. **Unlawful searches**

Bartz contends that the searches of him at the jail were unlawful because they were excessive and repetitive. *See* Dkt. 27, at 21–24. At the jail, Wolfgram patted down Bartz twice, Bahr took a scan of Bartz's body using the jail's body scanner, and Wolfgram looked through the pieces of clothing Bartz had removed for the body scan. Bartz argues that the searches were unnecessary because Messer had already searched him at the scene of the traffic stop and didn't find anything. *See id.* at 22.

Bartz is essentially arguing that the jail searches were unreasonable because defendants no longer had reason to suspect that he was concealing contraband. Bartz is correct that searches typically require individualized suspicion. *United States v. Martinez-Fuerte*, 428 U.S. 543, 560 (1976). But jails are "unique place[s] fraught with serious security dangers," including the smuggling of drugs or other contraband. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Consequently, the Supreme Court has recognized that jails may enforce generally applicable suspicionless search policies. *See id.* at 558–60; *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 330 (2012). But suspicionless searches still must be reasonable to satisfy the Fourth Amendment. *See Haro v. Porter Cnty.*, 129 F.4th 992, 996–97 (7th Cir. 2025). To evaluate whether a search is reasonable, courts weigh the need for the search against how invasive the search is, considering the search's scope, the manner in which it is conducted, and where the search is conducted. *Id.* at 997.

Bartz was searched at the jail pursuant to generally applicable jail policies, so individualized suspicion was unnecessary. It is undisputed that Columbia County Jail requires officers to pat down every arrested individual arriving at the jail, even if that individual was already searched by other officers. It is also undisputed that jail policy requires officers to look

7

through an individual's clothing in case something was missed during the pat-down search. And it is undisputed that jail training requires officers to scan the body of every person entering the jail. However, Bartz's situation can't fully be justified by general jail policies, because he was brought to the jail for the purpose of conducting the body scan.

But even if Bartz had been singled out for the searches, such that the policies were applied on an individual rather than general basis, defendants had reasonable suspicion to support the searches. A reasonable officer could have believed that Bartz was concealing drugs in a body cavity given that: (1) Messer's K-9 alerted to the truck; (2) Hollander saw Bartz grab something out of the truck's center console; (3) Messer didn't find any drugs after patting down Bartz outside the truck; (4) Messer didn't find any drugs inside the truck; and (5) the K-9 didn't alert after searching the truck without Bartz inside of it. The drugs weren't in the truck and they weren't *on* Bartz's person, so a reasonable officer could have deduced that they might be *in* Bartz's person, meaning in one of his body cavities.

Bartz contends that even if there had been individualized suspicion, the body scan was unreasonably invasive. Body scans are images of the inside of an individual's body; they "reveal concealed objects that are of a different density than human tissue." *Id.* at 995. Defendants used the jail's body scanner to produce three X-ray images of Bartz's body. *See* Dkt. 30, Ex. 5. It is undisputed that Bartz had to change into jail uniform pants, but he did not need to remove his shirt or underwear. *See* Dkt. 48, ¶¶ 119, 120. The body scan took just under a minute, measured from the time Bartz stepped into the machine to the time he stepped out of it. Dkt. 35, Ex. 3 (Messer Body Cam, at 01:56:39–01:57:37).

Bartz's body scan was far less intrusive than searches the Seventh Circuit has found to be reasonable. Consider a pair of recent cases. In *Brown v. Polk County*, 965 F.3d 534 (7th Cir.

8

2020), the court held that visually and physically inspecting an inmate's genitals was reasonable because the search was conducted according to a written policy, in a private setting, by licensed medical professionals, and within a reasonable timeframe. *See Brown*, 965 F.3d at 541. In *Haro v. Porter County*, the court held that instructing an arrestee to take off her clothing, bend over, and spread her buttocks for a visual inspection of her body was reasonable because the search was conducted in a private area, and the inspection lasted only 10 to 20 seconds. *Haro*, 129 F.4th at 995, 999. In this case, Bartz's body was briefly X-rayed in a private area of the jail while he was fully clothed. The body scan was not unreasonable.

The undisputed facts in this case establish that defendants did not violate the Fourth Amendment by transporting Bartz to the jail, briefly detaining him there, and conducting additional searches, including a body scan. Defendants' actions were not unconstitutional, so the court need not address qualified immunity. Nor does the court need to address Bartz's failure-to-intervene claims or his claim that Columbia County is liable under *Monell*, because these claims would require an underlying constitutional violation by an individual defendant.

ORDER

IT IS ORDERED that:

1. Plaintiff Justin Bartz's motion for partial summary judgment, Dkt. 26, is DENIED.

2. Defendants Columbia County, Robin Messer, Noah Hollander, Scout Bahr, Jill Ostrander, Mitchell Wolfgram, and Jordan Haueter's motion for summary judgment, Dkt. 32, is GRANTED.

3.  The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered March 2, 2026.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge